UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS DOYLE GEAN,<br><br>Defendant. | No. 1:17-cr-00179-DAD-BAM<br><br>ORDER DENYING DEFENDANT CURTIS DOYLE GEAN'S EMERGENCY MOTION TO REDUCE SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 47) |

Pending before the court is defendant Curtis Doyle Gean's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is based in part on the purported risks posed to defendant Gean by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On August 3, 2017, defendant Gean was indicted on three counts of receipt and distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) (Counts 1, 2 and 3) and one count of possession of material involving the sexual exploitation of a minor in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 4). (Doc. No. 1.) On April 9, 2018, defendant entered a plea of guilty to possession of material involving the sexual exploitation of a minor as alleged in Count 4. On July 16, 2018, the court sentenced defendant

Gean to the minimum mandatory term of 120 months in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 120-month term of supervised release. (Doc. Nos. 23, 36, 37.) The court also ordered defendant to pay special assessments in the amount of $5,100.00 and $1,000.00 in restitution to the victims of his offense. (Doc. No. 37.) Defendant is now serving his sentence at Federal Correctional Institution, Terminal Island ("FCI Terminal Island"). (*See* Doc. No. 47 at 9.)

At the time he filed the pending motion on June 15, 2020, defendant had served less than 22 months of his 120-month prison sentence. (*Id.* at 10.) On July 14, 2020, the government filed its opposition to the motion, and on July 21, 2020, defendant filed his reply thereto. (Doc. Nos. 54, 59.) On August 5, 2020, his counsel filed a status report to inform the court that on August 3, 2020, defendant Gean was found unresponsive and suffering from cardiac arrest and respiratory distress while incarcerated at FCI Terminal Island. (Doc. No. 60.) According to that status report, after physicians at Harbor UCLA Medical Center discovered that his left coronary artery was completely blocked, Gean underwent surgery and a stent was placed in the artery. (*Id.* at 2.) As of August 5, 2020, defendant Gean was at Harbor UCLA Medical Center recovering from that surgery. (*Id.*)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

/////

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was

3

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United

---

released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

Here, the parties do not dispute that defendant Gean has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 47 at 12–13; 54 at 3.) Accordingly, the court will turn to the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in

5

their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)  suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to

/////

his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). This provision does not apply here because, as noted above, defendant Gean has served only approximately 22 months of his 120–month prison sentence

Here, defendant Gean argues that extraordinary and compelling reasons warranting his compassionate release exist because he is 75 years old and is experiencing age-related physical deterioration. (Doc. No. 47 at 13–17.)[4] In this regard, defendant Gean has reportedly developed chronic open wounds on both of his lower legs that have not healed despite the passage of several months. (*Id.* at 16.) According to his counsel, before entering BOP custody defendant Gean could walk about 10 feet at a time, but he is now confined to a wheelchair. (*Id.*) Defendant also argues that he suffers medical conditions that put him at high risk of severe illness from COVID-19, including chronic obstructive pulmonary disease, asthma, coronary thrombosis, congestive heart failure, high blood pressure, high cholesterol, Type 2 diabetes, chronic kidney disease, and morbid obesity. (*Id.* at 17–22; *see also* Doc. No. 33) (detailing defendant's height and weight that compute a body mass index within the CDC's range for obesity). Moreover, it is reported that defendant Gean tested positive for COVID-19 on April 30, 2020, while in custody at FCI Terminal Island. (Doc. Nos. 47 at 11; 58 at 16.) Finally, defendant argues that Terminal Island

---

[4] The court notes that defendant's counsel has submitted over 500 pages of BOP medical records and other documents that counsel asserts support their position regarding defendant Gean's many serious medical conditions. (*See* Doc. Nos. 45, 47-1, 50, 50-1, 50-2, 50-3.) Those exhibits have been submitted to the court in a very confusing fashion, and the naming (referring to Exs. A–F) and page number citations to the medical records in counsel's briefing do not easily match the records as they have been filed on the court's docket. The court will simply assume that somewhere in the records there is support for each of defendant's specific assertions, since they appear to be generally supported.

7

has one of the most serious, widespread COVID-19 outbreaks of any BOP facility in the country, and that the living conditions there make it impossible for him to adequately care for and protect himself. (Doc. No. 47 at 23–28.) In this regard, defendant argues that as of June 11, 2020, FCI Terminal Island had 696 inmates and 17 staff members who had tested positive for COVID-19, and nine inmates had died as a result of the virus. (*Id.* at 23.)

The government concedes that defendant Gean's medical records indicate that he suffers from a myriad of serious health conditions and that some of those conditions are recognized by the CDC as high risk factors for becoming severely ill from COVID-19. (Doc. No. 54 at 9.) The government adds that, while defendant Gean is technically eligible for compassionate release under the applicable guidelines, his medical records show that he has recovered from COVID-19, despite all of his serious health conditions. (*Id.*) (citing Doc. No. 58 at 16). In reply, defendant Gean argues that the government does not address the true scope of the risk defendant faces because it fails to acknowledge the risk based on his advanced age in combination with those conditions. (Doc. No. 59 at 3–4.) Defendant Gean notes that he has at least six underlying medical conditions, in addition to age, and that the CDC recognizes that "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." (*Id.* at 4, 5.) Lastly, defendant Gean contends that his risk of becoming severely ill or dying from COVID-19 is neither lessened nor mitigated simply because he has once contracted and supposedly recovered from the illness, and that the government is incorrect in assuming that his recovery from COVID-19 provides him with immunity from further rounds of infection. (*Id.* at 2, 4–5.)

The court finds this to be a close case as to whether defendant Gean has satisfied his burden of showing that "extraordinary and compelling reasons" warrant his compassionate release. On one hand, defendant does present several serious medical conditions that put him at higher risk for severe illness from COVID-19, in addition to his advanced age. *See Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last reviewed September 1, 2020). Defendant's conditions of chronic obstructive pulmonary disease, asthma, congestive heart failure, high blood pressure,

8

Type 2 diabetes, chronic kidney disease, and a body mass index of over 30 are all conditions that are listed by the CDC as severe illness risk factors. *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed September 1, 2020). Additionally, as noted above, on August 3, 2020, defendant Gean was transported to Harbor UCLA Medical Center, where he underwent surgery and placement of a stent for a blocked left coronary artery. (Doc. No. 60 at 1–2.) Moreover, while defendant has recovered from an asymptomatic COVID-19 infection, (Doc. Nos. 47 at 18; 54 at 1; 58 at 16), courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *States v. Yellin*, Case No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, had a combination of medical conditions that placed him at risk of COVID complications).

On the other hand, at the time the government filed its response to defendant's motion on July 14, 2020, there had been ten deaths of prisoners at FCI Terminal Island related to COVID-19. (Doc. No. 54 at 5.) At that point, however, there were only eleven confirmed active COVID-19 cases among any prisoners or staff members at FCI Terminal Island. (*Id.*) As of September 1, 2020, the BOP reports that three prisoners and zero staff members at that prison are now confirmed as active COVID-19 cases, with no additional deaths. *See* https://www.bop.gov/coronavirus/ (last reviewed September 3, 2020). The court certainly recognizes that FCI Terminal Island initially failed to control the outbreak of COVID-19 at that institution, as a high number of its inmates tested positive for the virus. *See United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of infection, given the high numbers of infected inmates and defendant's own contraction of the

9

virus."); (Doc. No. 54 at 5). That situation is obviously an extremely serious one. But it appears that in the two months since defendant Gean filed his motion on June 15, 2020, the active COVID-19 virus cases at FCI Terminal Island have significantly decreased.[5]

Additionally, the government argues that medical staff at FCI Terminal Island was able to adequately care for defendant Gean following his testing positive for the virus. (Doc. No. 54 at 3–4) ("Gean was in isolation where he was monitored daily for signs of any symptoms or detrimental impacts on his health. On May 10, 2020, after showing no symptoms since testing positive, Gean met the CDC criteria for release from isolation and has been considered COVID-19 recovered.") (citing Doc. No. 58 at 16). Defendant contends, however, that FCI Terminal Island has generally been unable to meet his medical needs. In a June 15, 2020 declaration, Assistant Federal Defender (AFD) Jaya C. Gupta states that at that time, defendant Gean reported as follows: he was residing in an open-plan dormitory filled with bunk beds spaced approximately two to three feet apart (Doc. No. 47-1 at ¶ 2); he often slept in his wheelchair instead of getting into his bunk (*id.*); approximately fifty prisoners, all of whom have tested positive for COVID-19, reside in Unit D with him and prisoners are only permitted to leave the unit to obtain food (*id.* at ¶¶ 2, 3); the ventilation in the unit is poor and defendant believes he is breathing in the air and respiratory droplets of other prisoners in that unit (*id.* at ¶ 3); as of June 15, 2020, defendant had been given a cloth mask but had not been provided with any unsoiled masks since (*id.* at ¶ 4); the medical staff at Terminal Island are "too busy" attending to others (*id.* at ¶ 6); and when he is allowed a doctor visit, he cannot ask medical questions because the doctor does not have time to respond (*id.*).

In light of all of the above, the court concludes that defendant suffers from multiple serious medical conditions and several of those conditions place him at higher risk of becoming seriously ill if he were to be re-infected by COVID-19. When considered in combination with the severity of the COVID-19 outbreak at Terminal Island, even if it has at this time been controlled

---

[5] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

to some extent, these circumstances are sufficient to support a finding of extraordinary and compelling reasons warranting a reduction of his sentence.  Moreover, defendant Gean's congestive heart failure, chronic kidney disease, and chronic obstructive pulmonary disease are all serious medical conditions for which there is no cure and, when considered in combination with him being wheelchair bound at this stage of his life, supports a finding that his ability to provide self-care within the prison setting has been substantially diminished.

**C.      Consistency With the § 3553(a) Factors**

Finally, although defendant's motion is supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6]  *See Parker*, 2020 WL 2572525, at *11.

First, as noted above, on July 16, 2018, defendant was sentenced to the minimum mandatory sentence of 120-months in the custody of the BOP for possession of material involving the sexual exploitation of minors.  (*See* Doc. Nos. 33, 36.)[7]  The Presentence Report noted that defendant's offense involved over 26,000 images and videos of child pornography.  (Doc. No. 33 at 8.)  In light of this, the nature of those depictions, and the age and vulnerability of those depicted, and with defendant's acceptance of responsibility acknowledged, it was determined that his total offense level was 30 and his criminal history category was I.  (*Id.* at 4–

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

[7] In defendant's sentencing memorandum is was acknowledged that his plea agreement called for imposition of the minimum mandatory sentence of 120 months in custody.  (Doc. No. 35 at 4.)

9.) This resulted in an advisory sentencing guideline range calling for a term of imprisonment of 120 to 121 months in light of the minimum mandatory ten-year sentence. (*Id.* at 17.) The probation officer recommended a low-guideline sentence of 120 months in BOP custody. (*Id.*) The undersigned followed that recommendation and sentenced defendant to the minimum mandatory 120-month term of imprisonment with a 120-month term of supervised release to follow along with penalty assessments and restitution. (Doc. No. 36.)

Although the defendant's criminal history placed him in category I, it should be noted that his one prior misdemeanor conviction was suffered in 1984 for unlawful sexual intercourse with a minor. (Doc. Nos. 33 at 9, 17; 54 at 11.)[8] In light of this background, consideration of the risk of recidivism on the part of the defendant weighs to some degree against the granting of compassionate release. *See, e.g.*, *United States v. Drummondo-Farias*, No. 1:12-cr-001740-JMS, 2020 WL 2616119, at *6 (D. Haw. May 19, 2020) (denying compassionate release to a defendant in part because had been twice convicted of drug offenses); *cf. United States v. Watson*, No. 3:18-cr-00025-MMD-CLB-1, 2020 WL 4251802, at *4 (D. Nev. July 22, 2020) (noting that defendant's sex offense was serious but granting compassionate release in part because the offense of conviction was his first).

The government argues that defendant Gean continues to present a danger to the community. The government points to *United States v. Mitchell*, 2:12-cr-00401-KJM, 2020 WL 2770070, at *3 (E.D. Cal. May 28, 2020), a case in which the court denied a compassionate release motion and recognized the inherent dangerousness of child pornography offenses. (Doc. No. 54 at 10.) In finding that the defendant in that case posed a danger to the community, the court noted that the defendant (1) committed his crime at home, which is where he wished to be released on home confinement; (2) had only served about one-third of his term of imprisonment; (3) and provided no information showing he had engaged in any sort of rehabilitation while incarcerated. *Mitchell*, 2020 WL 2770070, at *4.

---

[8] According to the Presentence Report, felony charges against the defendant were dismissed and defendant denies any wrongdoing in connection with that offense, claiming that he had pled guilty only to allow the alleged victim from going through the stigma of a trial. (Doc. No. 33 at 9.)

Here, defendant Gean is also requesting home confinement (Doc. No. 47 at 12), and, if the requested relief were granted, he would be released to the same place at which he committed the crime for which he was convicted. Defendant notes he resided at home during pretrial proceedings successfully without any issues and that this demonstrates that he can live at that location without reoffending. (Doc. No. 59 at 10.) The court in *Mitchell*, however, discounted a similar argument. *See Mitchell*, 2:12-cr-00401-KJM (Doc. No. 256 at 14).

Additionally, as of the date of this order, defendant Gean has now served only 24 months of the 120-month sentence, or approximately 20 percent.[9] *See United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) ("'The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion.") (quoting *Connell*, 2020 WL 2315858, at *6). The government emphasizes that the statutory mandatory minimum sentence for defendant's offense of conviction was a ten-year prison term, which defendant has obviously not completed. (Doc. No. 54 at 10) (citing 18 U.S.C. § 2252(a)(4)(B)).

Finally, although defendant has not completed any rehabilitative programming, he argues that this is because sex offender treatment is not offered at FCI Terminal Island. (Doc. No. 59 at 10.) Here, defendant has, appropriately, offered a proposed release plan that includes participation in the Circles of Support & Accountability (CoSA), a program in Fresno that provides specialized treatment and counseling services to clients who are under supervision in the Eastern District of California. (Doc. No. 50-3 at 2.) It is the case that some courts have granted compassionate release and included in the conditions of supervised release a specific sex offender treatment program. *See Hanson*, 2020 WL 3605845, at *6 (noting that defendant "had no plan for

---

[9] Defendant Gean has thus served far, far less of his sentence than the defendants had in the vast majority of the cases in which compassionate release has been granted and upon which the defense relies. (*See* Doc. No. 46 & n. 49.)

13

a sex offender treatment assessment and no treatment provider in mind" and directing defendant to participate in a specific, well-established treatment program in close proximity to defendant's home); *Mitchell*, 2020 WL 2770070, at *4 ("Absent any evidence supporting defendant's rehabilitation or a detailed release plan imposing conditions to prevent the likelihood of defendant's reoffending from his home where he request placement, defendant has not met his burden to show releasing him to home confinement will not pose a danger to the public.")  While acknowledging this proposal by defendant to participate in a rehabilitation program if released, the court recognizes that even actual rehabilitation alone is not enough to warrant compassionate release.  *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

This is a difficult case.  Defendant Gean's offense of conviction is obviously an extremely serious one that caused a great deal of damage to his victims.  (*See* Doc. Nos. 33 at 4–9; 33-1.)  When the court sentenced the defendant in 2018, it was aware that he suffered from a number of very serious medical conditions, had very limited mobility, was dependent on a wheelchair and was then 73 years of age.  (*Id*. at 2, 12.)  The realities of this unfortunate situation appear to have been recognized by the defendant and those close to him at that time as well.  (*See* Doc. Nos. 35, 42.)  Thus, the fact that defendant Gean's health is becoming progressively worse, two years later while imprisoned at the age of 75, is not completely unanticipated.  What could not have been foreseen was the impact of the COVID-19 pandemic.  This is especially true where, as here, defendant Gean has contracted the virus while imprisoned.  And yet, it appears that his most serious medical challenges are not closely associated with the virus.  In the end, the court concludes that a reduction of defendant's ten-year sentence effectively to a term of only two years would simply not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.

/////
/////
/////
/////
/////

*See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).[10]

## CONCLUSION

Defendant Gean has demonstrated, in the undersigned's view, "extraordinary and compelling" reasons that could justify his release under 18 U.S.C. § 3582(c)(1)(A). However, he has not shown that his release from imprisonment at this time, after serving only two years of a ten year sentence, would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). Accordingly, defendant's motion for compassionate release (Doc. No. 47) is denied.

IT IS SO ORDERED.

Dated: **September 4, 2020**

UNITED STATES DISTRICT JUDGE

---

[10] Defendant requests that the court either reduce his sentence to time served or amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement. (Doc. No. 47 at 31–32.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020). Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e. 24 months) and modify the conditions of supervised release to require home confinement for approximately 8 years. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Gean in a custodial setting. If the BOP determines that the defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard (*see* fn. 2, above) the court trusts it will do so. The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced.